IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARION L. MARZOCCHI, d.b.a. PRAPATA,<br><br>    Plaintiff,<br><br>    v.<br><br>TARA TIGER, INC., et al.,<br><br>    Defendants. | Case No.: 12-cv-4433 JSC<br><br>**ORDER RE: PETITION TO COMPEL ARBITRATION AND MOTION TO STAY PROCEEDINGS (Dkt. No. 30)** |

    Plaintiff contends Defendants unlawfully used her art work on their beach bag product line. Now pending before the Court is Defendants' Petition to Compel Arbitration and Motion to Stay Proceedings. (Dkt. No. 30). After carefully considering the parties' briefing and evidence, including their post-hearing briefs, and having had the benefit of oral argument on February 14, 2013, the Court finds that the parties did not agree to arbitrate the dispute presented by Plaintiff's complaint. Accordingly, the Court DENIES the Petition to Compel Arbitration and Motion to Stay.

## BACKGROUND

    Plaintiff Marion Marzocchi, d.b.a. Prapata, is an artist and resident of Hawaii. (Complaint ¶ 5.) In 2000, she met Defendants Paul Tiger and Dorothy Patricia Moller-Tiger.

(*Id.* ¶ 13.)  The Tigers jointly own Tara Tiger, Inc. a California limited liability corporation which manufactures and distributes resort, cruise, and beach bags in the United States and Caribbean.  (*Id.* ¶¶ 6-8.)  On July 7, 2000, Defendant signed a licensing agreement with Plaintiff granting Tara Imports (the successor company to Tara Tiger, Inc.) the right to use Plaintiff's artwork in its beach bag line.  (Complaint ¶ 14; Dkt. No. 31, Ex. A.)  In exchange, Plaintiff would receive royalties in the amount of five percent.  (*Id.*)  On July 3, 2001, Defendant signed a revised licensing agreement granting Tara Imports the right to use additional artwork and raising the royalty fees to seven percent.  (Complaint ¶ 15; Dkt. No. 31, Ex. B.)  Both licensing agreements included an arbitration clause at Paragraph 6 which reads as follows:

> 6.   Term.  Until revoked by either party.  In the event either party wishes to cancel the agreement, option for recourse will be made through California binding arbitration In lieu of legal fees.

(Dkt. No. 31.)  Plaintiff received royalty payments and quarterly statements until sometime in 2003.  (Complaint ¶ 16.)  In early 2012, Plaintiff discovered that Defendants were continuing to use her artwork on their products.  (*Id.* ¶ 18.)  Plaintiff, through counsel, sent a cease and desist letter on August 14, 2012.  (*Id.* ¶ 19).

Plaintiff subsequently filed this action against Defendants Tara Tiger, Inc., Dorothy Patricia Moller-Tiger, and Paul Tiger. The Complaint alleges claims for copyright infringement, breach of contract, and unfair business practices.  Shortly after the Complaint was served, Defendants sent Plaintiff a letter terminating the contracts.  (Dkt. No. 31 ¶ 5.)  Thereafter, Defendants filed the pending Petition to Compel Arbitration.  (Dkt. No. 11.)

## LEGAL STANDARD

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 2, et seq., provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Under the FAA, "arbitration agreements [are] on an equal footing with other contracts," and therefore courts are required to enforce arbitration agreements according to their terms. *Rent–A–Center, West, Inc. v. Jackson*, — U.S. —, 130 S.Ct. 2772, 2776, 177 L.Ed.2d 403 (2010). "Like other contracts, however, they

may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id*. (internal citations and quotations omitted).

The FAA espouses a general policy favoring arbitration agreements. *AT & T Mobility v. Concepcion*, — U.S. —, 131 S.Ct. 1740, 1745–46, (2011). Federal courts are required to rigorously enforce an agreement to arbitrate. *See Hall Street Assoc., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). The court must direct parties to proceed to arbitration should it determine: (1) that a valid arbitration agreement exists; and (2) that the agreement encompasses the dispute at issue. *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008); *see also* 9 U.S.C. § 4 ("If a court ... [is] satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."). Courts shall resolve any "ambiguities as to the scope of the arbitration clause itself ... in favor of arbitration." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989).

Under the FAA, "once [the court] is satisfied that an agreement for arbitration has been made and has not been honored," and the dispute falls within the scope of that agreement, the court must order arbitration. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967). Although the court may initially determine whether a valid agreement exists, disputes over the meaning of specific terms are matters for the arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002); *Prima Paint*, 388 U.S. at 403–04 (holding that "a federal court may consider only issues relating to the making and performance of the agreement to arbitrate").

## DISCUSSION

### A. Whether a Valid Arbitration Agreement Exists

The first question is whether there is an agreement between the parties to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler—Plymouth, Inc.*, 473 U.S. 614, 626, (1985). As arbitration is a matter of contract, a party cannot be required to arbitrate a claim that it has not agreed to arbitrate. *AT & T Tech., Inc. v. Communs. Workers of Am.*, 475 U.S. 643, 648–

50 (1986). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotations and citations omitted). In this case, Plaintiff is a resident of Hawaii, Defendant is a California Corporation, and the contracts at issue state that "[i]n the event either party wishes to cancel the agreement, option for recourse will be made through California binding arbitration in lieu of legal fees."  (Dkt. No. 33-1, ¶ 6.)  The parties appear to agree that the Court should look to California contract law to determine whether the agreement to arbitrate is enforceable.

In California, the elements for a viable contract are (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration. *United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).  Here, Defendant Paul Tiger mailed signed documents entitled "Licensing/Royalty Agreement" and "Licensing/Royalty Agreement (revised)" to Plaintiff on July 7, 2000, and July 3, 2001, respectively. (Complaint ¶¶ 14 & 15; Dkt. No. 31, Exs. A & B at ¶ 6.)  The agreements granted Tara Imports the right to use Plaintiff's artwork specified therein in return for five percent and seven percent royalty payments, respectively. The royalty payments ceased sometime in 2003, but Plaintiff alleges that sometime in 2012 she discovered that Defendants were still using her artwork.   (Complaint ¶¶ 16-17.)

As an initial matter, the arbitration agreement does not fail merely because the contract was signed only by Paul Tiger on behalf of Tara Imports (now Tara Tiger, Inc.). The parties' course of conduct determines the validity of the contacts— "[a] voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting." CAL. CIV. CODE § 1589.  Further, "[a]lthough an arbitration agreement must be in writing, it need not be signed to be enforceable if the unsigned agreement is otherwise deemed to be a contract under state law principles." *Shany Co., Ltd. v. Crain Walnut Shelling, Inc.*, No. 11-1112, 2012 WL 1979244, at *5 (E.D. Cal. June 1, 2012).  The parties' actions here manifest intent to be bound by the terms of the licensing agreements.

The Court is also not persuaded by Plaintiff's contention that the contents of the agreement are ambiguous. "Under California law, the interpretation of a contract is a question of law[.]" *In re Bennett*, 298 F.3d 1059, 1064 (9th Cir. 2002) (citation omitted). California Civil Code section 1638 prescribes: "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." A contract must be construed "by reading it as a whole and interpreting each part with reference to the entire contract." *Tanadgusix Corp. v. Huber*, 404 F.3d 1201, 1205 (9th Cir. 2005); *see also Winet v. Price*, 4 Cal.App.4th 1159, 1166, 6 Cal.Rptr.2d 554 (1992) ("It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce"). Here, the contract is quite brief and its terms clear.

Similarly, the Court finds Plaintiff's piecemeal theory of contract enforcement unavailing. Plaintiff agrees that the parties intended to create a license agreement, but contends that she did not intend to be bound by any arbitration clause in the agreement; instead, Plaintiff contends that the parties only agreed to the payment terms. She bases this theory on the undisputed fact that Plaintiff did not sign and return the document to Defendant. Plaintiff has sued for breach of contract—she cannot have it both ways. Either there was an enforceable contract or not; if so, she is bound by all its terms including the arbitration agreement. *See Teledyne, Inc. v. Kone Corp.*, 892 F.2d 1404, 1410 (9th Cir. 1989) (affirming an order compelling arbitration where the Plaintiff brought a breach of contract action, thus implicitly agreeing to the validity of the underlying contract and did not make an independent challenge to the arbitration provision).

While a contract "extends only to those things concerning which it appears that the parties intended to contract," Plaintiff never manifested the intent not to be bound by the contract as a whole. CAL. CIV. CODE § 1648. To the contrary, in the 2001 revised contract, a sentence was added to the clause containing the arbitration language which reads "[i]n the event of death of Prapata, payments shall be made to her daughter, Shakti Kahler, under the terms of this agreement." (Dkt. No. 31, Ex. B at ¶ 6.) Plaintiff, not Defendants, would have requested this language, suggesting that she was not only aware of, but agreed to the

5

1 preceding sentence regarding arbitration. "The whole of a contract is to be taken together, so
2 as to give effect to every part, if reasonably practicable, each clause helping to interpret the
3 other." Cal. Civil Code § 1641.  Accordingly, the Court concludes that a valid arbitration
4 agreement exists between the parties.

### B. The Scope of the Arbitration Agreement

The Court next must decide the scope of the arbitration agreement. The arbitration clause is contained within the paragraph defining the term of the agreement and states: "Term. Until revoked by either party.  In the event either party wishes to cancel the agreement, option for recourse will be made through California binding arbitration In lieu of legal fees." (Dkt. No. 33-1, pp. 6, 10.)   The plain language of this provision limits arbitration to disputes involving the cancellation of the agreements.

"[A] federal court's task in reviewing the arbitrability of a particular dispute is to determine whether the parties have agreed to submit that dispute to arbitration—i.e., whether the dispute is within the scope of the arbitration agreement." *AT & T Mobility LLC v. Bernardi*, No. 11-03992, 2011 WL 5079549, at *3 (N.D. Cal. Oct. 26, 2011).  The agreements here indisputably do not contain language which states that "any and all disputes shall be submitted to binding arbitration" although such language is routine in arbitration clauses. *See, e.g., Schoenduve Corp. v. Lucent Techs., Inc*., 442 F.3d 727, 732–33 (9th Cir. 2006) ("any dispute arising out of or relating to"); *Chiron Corp. v. Ortho Diagnostic Sys., Inc*., 207 F.3d 1126, 1131 (9th Cir. 2000) ("The parties' arbitration clause is broad and far reaching: 'Any dispute, controversy or claim arising out of or relating to the validity, construction, enforceability or performance of this Agreement ...' "); *Simula, Inc. v. Autoliv, Inc.,* 175 F.3d 716, 721 (9th Cir. 1999) ("the language 'arising in connection with' reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract").

Instead, the parties here specified that the arbitration clauses become effective if "either party wishes to cancel the agreement." (Dkt. No. 33-1, pp. 6 & 10, ¶¶ 6.)  Thus, this case is akin to cases interpreting arbitration clauses covering disputes "arising out of" or

"relating to" a particular subject matter. *See, e.g., Tracer Research Corp. v. National Environmental Services Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994) (holding that "arising out of language" would not encompass a tort claim, which is an "independent wrong from any breach" of the contract that "does not require interpretation of the contract and is not arbitrable."); *Mediterranean Enterprises, Inc. v. Ssangyong Construction Co.*, 708 F.2d 1458, 1463-64 (9th Cir. 1983) (holding that the parties choose not to have a broad arbitration provision by using "arising hereunder" language rather than the common "arising out of or relating to" language). The Ninth Circuit has held that "arising under" language signifies a narrow arbitration agreement. *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 924 (9th Cir. 2011) *cert. denied*, 132 S. Ct. 1862 (U.S. 2012) (discussing the court's narrow interpretation of "arising under" language). The plain language of the arbitration clause limits the arbitration requirement to "in the event either party wishes to cancel the agreement" and does not include other disputes, such as the payment of licensing and royalty fees that might occur under the terms of the agreements while in effect.

      Defendants, at oral argument and in their supplemental brief, argue that limiting the arbitration agreement to disputes involving cancellation of the agreement would render the arbitration clause meaningless because the agreement is unilaterally terminable such that there can be no wrongful termination of the agreement. Not so. There are a litany of reasons why one side might have recourse upon cancellation of the agreement, including the hypothetical discussed at oral argument where, for example, the licensor canceled the agreement while the licensee was awaiting a shipment of goods bearing the licensed artwork. Under those circumstances, the licensing party might have a legal claim based on the timing of the cancellation, sufficiency of notice, and the like. Defendants' insistence that the licensee would require injunctive relief in that situation, relief that an arbitrator could not provide, is wrong. The licensee's damages would be monetary and therefore injunctive relief unavailable. *See Walters v. Reno*, 145 F.3d 1032, 1048 (9th Cir. 1998).

      The Court is similarly unpersuaded by Defendants' contention that "[t]he logical explanation for adding the condition to arbitration is that any disagreement not justifying

7

cancellation of the Agreement is not worth submitting to formal dispute resolution." (Dkt. No. 43 5:12-13.) A party to a contract has multiple remedies when it believes its right under the contract have been violated or the other party is not performing. One remedy is termination, but another is seeking to enforce its rights under the contract and compel the other party to perform under the contract, as here. Defendants' suggestion that the agreements here require a party to terminate the agreement as a precondition to raising any major (as opposed to minor) issues regarding the contract reads too much into the language of these short agreements. The Court is bound by the agreements' language. Defendants' counsel's interpretation of the agreements is not evidence of their meaning.

As arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute it has not agreed is subject to this alternative means of resolving disputes. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995); *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547, 552, 21 Cal.Rptr.3d 322 (2004). The Court finds that the parties here limited the arbitration clause to disputes over the cancellation of the agreement. At the time this case was filed, neither party had exercised their rights to revoke or terminate the agreements; instead, Plaintiff sued for copyright infringement, breach of contract, and unfair business practices. It was only after the suit was filed that Defendants sent a letter terminating the contracts effective October 9, 2012. (Dkt. No. 31, ¶ 5.) Because this case is not about cancellation of the agreements, and instead concerns copyright infringement and breach of contract claims with respect to the royalty payments under the agreements, the arbitration clause does not apply.

## CONCLUSION

Based on the foregoing, Defendant's Petition to Compel Arbitration and Motion is Stay is DENIED (Dkt. No. 30).

**IT IS SO ORDERED.**

Dated: March 21, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

8